RECEIVED

AFTER 4:00 PM

Brewster H. Jamieson, ASBA No. 8411122
LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone:   907-277-9511
Facsimile:   907-276-2631
Email:    jamiesonb@lanepowell.com

FILED

DEC 2 0 2005

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By_____Deputy

Attorneys for Defendants New York Life Insurance
Company, Paul Revere Life Insurance Company,
UnumProvident Corporation, and Genex

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ALASKA

MARK R.M. HOLMSTRAND,

                    Plaintiff,

v.

NEW YORK LIFE INSURANCE COMPANY,
et al.

                    Defendants.

Case No. A05-0066 CV (JKS)

**OPPOSITION TO PLAINTIFF'S
MOTION FOR SANCTIONS FOR
OBSTRUCTING 30(b)(6) DEPOSITIONS**

COME NOW defendants New York Life Insurance, Company, Paul Revere Life Insurance Company, UnumProvident Corporation, and Genex, by and through counsel, and hereby oppose plaintiff's motion for sanctions regarding the 30(b)(6) depositions.

Plaintiff's complaints about the depositions are the result of what can only be described as a deliberate "bait and switch" tactic by plaintiff's counsel. The motion makes much of plaintiff's October 11, 2005 Notice of Videotaped 30(b)(6) Depositions, but glosses over the fact that the Notice substantially changed the scope of the depositions after the subject matter of the depositions had been established, the 30(b)(6) witnesses had been identified, the depositions scheduled, and the travel plans for the depositions made.

**1.    Facts.**

Attached hereto is the Declaration of Brewster H. Jamieson, which states the facts of this matter as follows:

<div style="writing-mode: vertical">**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631</div>



LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

On August 4, 2005, plaintiff's counsel Jeff Rubin wrote a letter outlining certain depositions he wished to take. (Exhibit A to Jamieson Dec.)  That letter identified certain categories of witnesses, including witnesses at New York Life, Paul Revere and UnumProvident "with respect to their relationship" with one another.  This letter combined these categories with a request to produce witnesses most familiar with the handling of Mr. Holmstrand's claims.  Mr. Jamieson understood the focus of these deposition categories to be claim handling related—that is, Mr. Rubin wanted to take depositions of the individuals most familiar with the handling of Mr. Holmstrand's claims, together with those individuals most familiar with how the claims handling was set up between New York Life and Paul Revere/UnumProvident.

The selection of the witnesses for these depositions was delayed by mediation, which took place in Seattle on August 31, 2005.  Unfortunately, the parties were not able to settle this matter.  After that mediation, Mr. Rubin called Mr. Jamieson and renewed his interest in taking the depositions described in his August 4, 2005, letter; Mr. Rubin suggested conducting these depositions during either the week of October 10 or October 24, 2005.  On September 16, 2005, Mr. Jamieson wrote Mr. Rubin in response to his suggested dates, and advised him that this office was working to identify the witnesses, their locations, and their availability.  The preliminary plan was to take the "insurance" witnesses in Worcester, Massachusetts and New York City at the beginning of the week, and Mr. Leimgruber in Ohio at the end of the week, returning to Anchorage on Friday night.

Based on this office's understanding of Mr. Rubin's letter, defendants identified two "relationship" witnesses:    Mary Ann Simmons of New York Life and Holly Crawford of UnumProvident.  These individuals were selected based upon their having been personally involved in and responsible for the transition of claims handling for the New York Life Individual Disability Insurance policies from New York life to Paul Revere/UnumProvident.  Ms. Crawford, a director for UnumProvident, led a group of UnumProvident employees who went to New York at the beginning of the relationship in 2000 and received training and physically transferred the files to Worcester for handling there.  Ms. Crawford continues to have involvement in claims handling of this line of business to this day.  Ms. Simmons, a corporate vice president of New York Life, was also personally involved in the New York City end of the transition of the claims to UnumProvident, and interfaced with UnumProvident claims handlers both in New York City and Worcester.  She continued to have personal

involvment in this block of business after the transition, up to and including the present. This office believed that these two witnesses were totally appropriate "relationship" witnesses, as we understood this term. Both witnesses know, personally, the day to day issues related to the relationship between New York Life and UnumProvident.

After identifying Ms. Simmons and Ms. Crawford as "relationship" witnesses, this office also identified and secured the availability of the "claim" witness, Ms. Melissa Kirby. Ms. Kirby was the claims consultant who handled Mr. Holmstrand's claim, and she is intimately familiar with the 3000-page (approximate) claim file. Ultimately, these witnesses were all available in Worcester during the week of October 24, 2005, as Mr. Rubin requested.

Note that Mr. Rubin's August 4, 2005, letter also asked that we identify New York Life witnesses who were familiar with the handling of Mr. Holmstrand's claim. Early in this process, Mr. Jamieson told Mr. Rubin that there would be no such witness identified, since no one at New York Life was involved in any aspect of this claim.

During this process, the undersigned was in periodic contact with Mr. Rubin. At some point, we realized that it would be very difficult to do depositions in New York City, Worcester and Toledo in the same week. Accordingly, the undersigned offered to see about getting the New York Life witness to Worcester, which would save about a half day. On October 4, 2005, Mr. Jamieson emailed Mr. Rubin indicating that Mr. Jamieson was trying to get the New York Life witness in Worcester on October 25, 2005, and that the Worcester depositions would be on the 25 and 26, 2005. (Exhibit B to Jamieson Dec.) On October 11, 2005, about 1 p.m., Mr. Jamieson spoke with Mr. Rubin and informed him that Mr. Jamieson had secured the agreement of Ms. Simmons to come to Worcester for her deposition on October 25. In the same call, Mr. Rubin and Mr. Jamieson agreed to a specific schedule as follows:

> Monday, October 24
> Travel/Preparation Day
>
> Tuesday, October 25
> 9:00 am—New York Life Relationship Witness
> 1:00 pm—UnumProvident Relationship Witness
>
> Wednesday, October 26
> All Day—Deposition of Melissa Kirby
> Travel to Toledo, OH
>
> Thursday, October 27
> Deposition of Leimgruber

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

Friday, October 28
Return Travel to Anchorage

Later that day, Mr. Rubin sent Toledo hotel information to Mr. Jamieson, and he stated that the deposition notices would be forthcoming.  (Exhibit C to Jamieson Dec.)  The notices he sent reflected these dates, times and locations, and these were logged into Mr. Jamieson's calendar by his secretary.  Because the individuals, dates, times and locations were already agreed, Mr. Jamieson did not carefully review the notices sent by Mr. Rubin until he began his preparations for the trip late during the next week.

As can be seen from the schedule the parties agreed on, the parties allocated one-half day each for the "relationship" witnesses, and a full day for the "claim" witness.  During a telephone conversation between Mr. Jamieson and Mr. Rubin on October 11th, Mr. Rubin expressed concern that this might not be enough time to cover all of the areas he had in mind for the "relationship" witnesses.  Mr. Jamieson stated, and Mr. Rubin agreed, that the schedule simply would not permit longer depositions during the week of October 24, 2005, and that Mr. Rubin would reserve the right to do another round of Worcester depositions later.  Mr. Jamieson and Mr. Rubin also discussed the fact that the witnesses defendants had located were "it" as far as this trip was concerned, and that there was not sufficient time to locate and secure the availability of additional witnesses, who could not be deposed in the tight time frame available to the parties in any event.[1]

Mr. Jamieson sent a letter confirming this conversation the day before the depositions, on October 24, 2005.  That letter refers to the parties' October 11, 2005, discussion on the issue, and clearly sets forth what is stated above.  In addtition, Mr. Jamieson's October 24, 2005 letter refers Mr.

---

[1] In fact, at the Deposition of Mary Ann Simmons defendants' counsel's statement expressly noted—without comment from plaintiff's counsel—that the parties agreed that the Rule 30(b)(6) witnesses would have to suffice as they were, and that the parties anticipated a second round of depositions in Worcester:

> There may be objections we'll have in addition to that but this individual can't testify to all these topics, and I think we had agreed we will go as far as we could with this witness, the UnumProvident witness, or the UnumProvident witnesses on this trip and then we probably have to come back and get whatever other witnesses you wanted on a different trip.

Simmons Depo., p. 12 ln. 10-19.

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

Rubin to the fact that many of the categories on which he was seeking 30(b)(6) testimony were, in fact, the same categories he had included in earlier discovery requests, and to which my clients had provided timely objections.

### 2.    Defendants Did Not "Obstruct" The Depositions With Improper Witnesses.

Under the facts as set out above, sanctions are not appropriate because plaintiff has no grounds to complain that defendants in any way obstructed the depositions. By the time the October 11 30(b)(6) Notice which substantially changed the scope of the depositions was received by defendants, (1) the 30(b)6) witnesses had already been identified; (2) the witnesses had been chosen based on what this office understood to be the topics identified in Mr. Rubin's August 4 letter; (3) the depositions had been scheduled and arranged; (4) travel plans for the depositions had been made; and (5) the parties agreed that there was insufficient time to locate and secure additional witnesses.[2]

Plaintiff tries to downplay the significance of the August 4 letter, claiming that the letter "would not have met the requirements of 'reasonable particularity'" under Rule 30(b)(6), and calling the letter a "general and inadequate reference." However, plaintiff's attempt to fault defendants for relying on the letter is unavailing. The fact, as seen in Mr. Jamieson's declaration, is that even before the October 11 Notice defendants were well aware that the witnesses were identified and the depositions set on reliance on the August 4 letter.

However, the October 11 Notice attempted to change the nature of the depositions and greatly expand the topics on which the witnesses would be deposed. Plaintiff's counsel understood that there was not enough time to obtain new witnesses to accommodate the newly-expanded scope of the

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

---

[2] *And see* Crawford Depo., p. 13 ln. 15-21:

> MR. JAMIESON: ... She was designated in response to a letter dated August 4th, and we scheduled her deposition, we got all the details buttoned up and then you sent the notice which in our view substantially differs from the August 4th letter.

Simmons Depo., p. 11 ln. 21 – p. 12 ln. 4:

> MR. JAMIESON: ... And then we went through a lot of difficulty in getting her scheduled personally and getting her scheduled to come to Worcester, and it was after that time after we had set on the date, the time and the person that we got your 30(b)(6) notice which is considerably more detailed than your August 4 letter.

depositions sought by the October 11 Notice. Plaintiff writes that the October 11 Notice "increased" the "specificity" of the topics to be addressed at the depositions (Motion, p. 22), but ignores that there was no time to find new witnesses who could address the new issues raised by this "specificity." Nor was defendants' reliance on Mr. Rubin's August 4 letter "last minute" as claimed by plaintiffs. Motion, p. 23. Again, before the October 11 Notice was even served, the witnesses had already been indentified and the depositions scheduled in reliance on the August 4 letter. Plaintiff cannot seriously contend that Mr. Rubin boarded a plane for Worcester thinking that the parties had selected witnesses to testify on topics (such as the financial decisionmaking leading to the sale or acquisition of the income disability block of business from New York Life; the market conduct examinations of UnumProvident conducted by other states; the financial arrangements between UnumProvident and New York Life, etc.) that defendants had previously objected to on numerous grounds, and which Mr. Rubin had not identified in his August 4 (which he knew this office used in the witness selection process). If plaintiff thinks that the 30(b)(6) deponents were not proper, that is a result of the October 11 Notice changing the rules in the middle of the game.

Moreover, plaintiff's requested sanction that defendants fund a new round of depositions in Worcester. is baseless in light of the fact that prior to the October 11 Notice plaintiff's own counsel reserved the right to have a second round of Worcester depositions. Plaintiff cannot complain that more depositions are necessary when his own counsel anticipated that very situation prior to the October 11 Notice. Plaintiff simply wants defendants to fund the second round of depositions his counsel suspected all along would be necessary; for the reasons stated above, there is no ground to have defendants do so.

### 3.  The Witnesses Were Not Unprepared.

Plaintiff argues that the witnesses were unprepared for their depositions, but this argument is based on plaintiff's counsel's insistence on addressing issues first raised in the October 11 Notice. By improperly attempting to significantly change the scope of the depositions through the October 11 Notice, plaintiff has "set up" the argument that the witnesses were unprepared.

However, the witnesses' depositions should not be viewed from the perspective of the October 11 Notice, but from Mr. Rubin's August 4 letter on which defendants relied in selecting the witnesses and setting the depositions. The fact is that the witnesses were prepared to address the

**LANE POWELL** LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

Opposition to Plaintiff's Motion for Sanctions for Obstructing 30(b)(6) Depositions
*Holmstrand v. New York Life Insurance Company, et al.* (Case No. A05-0066 CV (JKS))    **Page 6 of 10**

narrow "relationship" topics in the August 4 letter. *See* Crawford Depo., p. 19 ln. 13-16 (defendant's counsel stating that Ms. Crawford "is prepared and produced today to respond to ... your letter basically seeking a relationship person"); Simmons Depo., p. 11 ln. 11-20 (defendant's counsel stating regarding Ms. Simmons: "you sent an August 4th letter to us asking for somebody to designate somebody with respect to the relationship between UnumProvident and New York Life. We located and we did find that person; MaryAnn is that person."). As noted in Mr. Jamieson's declaration, the witnesses had personal involvement in day to day issues related to the relationship between New York Life and UnumProvident. In addition, as is seen from Mr. Jamieson's declaration, he had spent 8 hours the previous day preparing the witnesses for their depositions. Neither the witnesses nor defendants' counsel can be faulted for not preparing to address topics they did not know plaintiff would inquire into at the time the witnesses were identified and the depositions scheduled.

### 4. Defendants' Counsel Did Not Improperly Object Or Prevent The Witnesses From Testifying.

For the reasons stated below, plaintiff's complaints regarding defendants' counsel's objections at Ms. Simmons and Ms. Crawford's depositions are groundless and do not support the imposition of the requested sanctions.

**Mary Ann Simmons:** On p. 8 of the Motion, plaintiff himself notes that at the start of Ms. Simmons's deposition defendants' counsel expressly stated that the scope of the deposition would be limited to the topics raised in the August 4 letter, because "there are topics on here [i.e., the October 11 Notice] that she's not prepared to testify because we did not think this is what you wanted at this deposition." Simmons Depo., p. 11 ln. 11 - p. 12 ln. 9. For the reasons stated above, defendants' counsel properly limited the scope of the deposition to the topics identified prior to the October 11 Notice.

Plaintiff argues that defendants' counsel improperly "coached" Ms. Simmons not to answer questions beyond her personal knowledge. Motion, p. 24. However, none of plaintiff's citations to the transcript (*see* n. 92 to the Motion) support this argument, because in none of the cited portions did defendants' counsel ever instruct or coach the witness not to respond.

- Plaintiff cites to pp. 57-58 of Ms. Simmons's deposition, but defendants' counsel first merely objected on the grounds that the question assumed facts not in evidence (and

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511   Facsimile 907.276.2631

then instructed Ms. Simmon's to answer if she could), and then asked plaintiff's counsel to clarify his question.

- Plaintiff cites to p. 64, but defendants' counsel merely, and quite properly, instructed Ms. Simmons not to assume what the answer was, but to state whether she knew or did not know the answer. It is hardly sanctionable to instruct a witness to be sure of her answer.

- Plaintiff cites to pp. 76-77, but, again, defendants' counsel never instructed or coached the witness not to respond. (Starting on p. 78, defendents' counsel did instruct the witness not to answer on attorney-client and work product grounds; that will be discussed below).

- Plaintiff cites to p. 85, but there defendants' counsel merely objected on the grounds of speculation and then told the witness to "go ahead" and answer the question.

- Finally, plaintiff cites to pp. 90-91, but defendants' counsel only objected on the grounds of lack of foundation, and then told the witness: "Go ahead and answer if you're able."

Finally, although not explicitly discussed in the Argument section of the Motion, plaintiff appears to argue that defendants' counsel improperly advised Ms. Simmons not to testify, on attorney/client and work product grounds, regarding a claim file review performed in 2003, 2004 and 2005. Motion, pp. 11-13, 22 and n. 85; Simmons Depo., pp. 77 ln. 23 – p. 78 ln. 7; p. 81 ln 16 – p. 82 ln. 1. First, Ms. Simmons clearly testified that she conducted the reviews at the instruction and request of counsel. Simmons Depo., p. 77 ln. 10-13. As such, the conclusions of those reviews would be protected by the attorney/client privilege and work product doctrine, and so defendants' counsel's objection was entirely valid. Second, Ms. Crawford testified at her deposition that these reviews, or "audits," did not involve any particular claim (including plaintiff's claim). Crawford Depo., p. 78 ln. 12-13; *and see id.*, pp. 72-78 for a general discussion of these audits. Because plaintiff's claim was not involved in the audits, any testimony by Ms. Simmons about the audits would have been irrelevant. Thus, plaintiff's argument about the audits is a red herring which has nothing to do with this case.

**Holly Crawford:** As plaintiff admits (*see* Motion, p. 16), early in Ms. Crawford's deposition defendants' counsel put plaintiff's counsel on express notice of defendants' position (which is the basis

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511   Facsimile 907.276.2631

of this opposition, as discussed above) regarding the scope of the deposition and what Ms. Crawford was and was not going to tesify to:

> MR. JAMIESON:  ...Why don't I just get this on the record then it will be out there.  That she was designated before we received Exhibit 15, long before we received Exhibit 15.  *She was designated in response to a letter dated August 4th, and we scheduled her deposition, we got all the details buttoned up and then you sent the notice which in our view substantially differs from the August 4th letter.*
>
> So she's here and now to talk about the things we understood to be involved with your August 4th letter but this thing, this Exhibit 15 goes well beyond the August 4th letter *and so she's not here to discuss the things that go beyond theat letter*.

Crawford Depo., p. 13 ln. 11 – p. 14 ln. 4 (emphasis added).

Plaintiff claims that Ms. Crawford was instructed by counsel not to answer questions regarding her personal knowledge regarding the handling of plaintiff's claim.  Motion, p. 24 n. 92.  However, contrary to plantiff's argument, the reason for defendants' counsel's objection had nothing to do with Ms. Crawford's personal knowledge of the claims handling.  Instead, the objection was clearly made, in conformance with defendants' stated position in the above quote, that such questions would not be proper because they went beyond the "relationship" scope of the deposition as set out in the August 4 letter:

> MR JAMIESON:  I'm going to stop this line right here.  She is prepared and produced today to respond to a 30(b)(6) notice, or actually to your letter basically seeking a relationship person.
>
> She obviously had a role in the handling of this claim.  I'm not saying you don't get to depose her on that issue, but you don't get to do it today because she's here to talk about the relationship between UnumProvident and New York Life and that's why she was produced.
>
> ...
>
> What I'm saying the deposition – we will not conduct the deposition on the topic of her involvement on this file today.  You are certainly free now that you know she has an involvement in the file. ... And so that is the scope of today's deposition.  And I don't think the rules allow you to sort of go off in an area that she's not being produced with respect to.  But certainly you are free to schedule her deposition on the underlying file.

Crawford Depo., p. 19 ln. 12 – p. 20 ln. 23.

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

Defendants thus had no objection to plaintiff deposing Ms. Crawford on the handling of the claim, only that plaintiff could not do so at the Rule 30(b)(6) deposition without notice that this would be a subject of inquiry.  Moreover, defendants' counsel's objection to claim handling questions was properly based on the practical consideration of time: plaintiff had agreed to allot only half a day to Ms. Crawford's deposition on the relationship issues, and there was no time to get into questions on handling the claims file.  *Id.*, p. 21 ln. 4-14. ("MR JAMIESON: ... I don't think there would have been time anyway.  And I think the file centric questions are going to be covered in detail tomorrow [i.e, in Melissa Kirby's deposition] and I wouldn't think there would be time to conduct a file centric examination of her as well as a relationship centric examination").

## CONCLUSION

For the reasons stated above, the court is respectfully requested to deny the motion for sanctions in its entirety.

DATED this 20th day of December, 2005.

LANE POWELL LLC
Attorneys for Defendants New York Life Insurance Company, Paul Revere Life Insurance Company, UnumProvident Corporation, and Genex

By _____
Brewster H. Jamieson, ASBA No. 8411122

I certify that on December 20, 2005, a copy of the foregoing was served by mail on:

Jeffrey K. Rubin, Esq.
Friedman, Rubin & White
1227 West Ninth Avenue, Second Floor
Anchorage, Alaska  99501-3218

Scott J. Hendricks Leuning, Esq.
Clapp Peterson Stowers
711 H Street, Suite 620
Anchorage, Alaska  99501-3442

Nanci L. Biggerstaff, CPS, PLS
116008.0029/152404.1

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631